**2015-1669**

In The

# United States Court Of Appeals
## For The Federal Circuit

## LELY PATENT N.V.,

*Appellant,*

v.

## DELAVAL INTERNATIONAL AB,

*Appellee.*

**Appeal from the Patent and Trademark Office - Patent Trial and
Appeal Board in Inter Partes Review No. IPR2013-00575**

––––––––––––––

## BRIEF OF APPELLEE

––––––––––––––

**Jeffrey R. Snay**
**Douglas V. Rigler**
**Jeffrey M. Goehring**
YOUNG & THOMPSON
**209 Madison St., Suite 500**
**Alexandria, VA  22314**
**(703) 521-2297**

*Counsel for Appellee*

# CERTIFICATE OF INTEREST

Counsel for the appellee DeLaval International AB certifies the following:

1.      The full name of every party or amicus represented by me is:

>       DeLaval International AB.

2.      The name of the real party in interest is:

>       DeLaval International AB.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

>       DeLaval Holding BV
>       DeLaval Holding AB
>       Tetra Laval BV

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

| Law Firm | Attorneys |
|---|---|
| Young & Thompson | Jeffrey R. Snay |
| | Douglas V. Rigler |
| | Jeffrey M. Goehring |

Dated: September 1, 2015                     /s/ Jeffrey R. Snay
                                             Jeffrey R. Snay

# TABLE OF CONTENTS

**Page:**

CERTIFICATE OF INTEREST ............................................................... i

TABLE OF CONTENTS ..................................................................... ii

TABLE OF AUTHORITIES ................................................................ iv

STATEMENT OF RELATED CASES .................................................... vi

STATEMENT OF THE ISSUES ............................................................ 1

STATEMENT OF THE CASE ............................................................... 3

STATEMENT OF THE FACTS ............................................................. 4

    A.    The Claimed Invention ........................................................ 4

    B.    The Prior Art ..................................................................... 7

        1.    Rose ........................................................................ 7

        2.    Chandler ............................................................... 12

    C.    Lely's Motion to Amend ...................................................... 13

SUMMARY OF THE ARGUMENT .................................................... 14

ARGUMENT ................................................................................. 16

    A.    Standard of Review ........................................................... 16

    B.    The Board correctly construed "passing by" to encompass both continuous and intermittent motion ..................................... 18

    C.    The Board's Anticipation Finding is Supported by Substantial Evidence ......................................................................... 22

        1.    Rose Discloses Stalls ............................................... 23

      2.      Rose discloses a cleaning location intermediate a milk extracting location and an exit location ....................................26

D.     Lely does not dispute that claim 1 as construed by the Board is obvious ...........................................................................................28

E.     The Board Properly Denied Lely's Motion to Amend ........................28

CONCLUSION ....................................................................................................33

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Bilstad v. Wakalopulos*,
 386 F.3d 1116 (Fed. Cir. 2004) ....................................................17

*Graham v. John Deere Co.*,
 383 U.S. 1 (1966) ...........................................................................17

*Idle Free Systems, Inc. v. Bergstrom, Inc.*,
 IPR2012-00027, 2013 Pat. App. LEXIS 6302 (PTAB June 11, 2013) .........29

*In re Baxter Int'l, Inc.*,
 678 F.3d 1357 (Fed. Cir. 2012) .............................................16, 17

*In re Baxter Travenol Labs*,
 952 F.2d 388 (Fed. Cir. 1991) .......................................11, 24, 25

*In re Cuozzo Speed Techs., LLC*,
 778 F.3d 1271 (Fed. Cir. 2015) ....................................................18

*In re Gleave*,
 560 F.3d 1331 (Fed. Cir. 2009) ............................................. 16-17

*In re Schreiber*,
 128 F.3d 1473 (Fed. Cir. 1997) ....................................................22

*In re Spada*,
 911 F.2d 705 (Fed. Cir. 1990) ....................................................25

*In re Sullivan*,
 362 F.3d 1324 (Fed. Cir. 2004) ....................................................17

*In re Trans Texas Holdings Corp.*,
 498 F.3d 1290 (Fed. Cir. 2007) ....................................................20

*In re Translogic Tech., Inc.*,
 504 F.3d 1249 (Fed. Cir. 2007) ....................................................19

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004) ....................................................20

*Microsoft Corp. v. Proxyconn, Inc.*,
    789 F.3d 1292 (Fed. Cir. 2015) ......................................17, 19, 29

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ......................................19, 20, 21

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
    653 F.3d 1296 (Fed. Cir. 2011) ...................................................25

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
    135 S. Ct. 831 (2015)...................................................................17

## Statutes:

35 U.S.C. § 102(b) ...........................................................................3

35 U.S.C. § 103(a) ...........................................................................3

35 U.S.C. § 316(a)(9)......................................................................29

35 U.S.C. § 318(b) ..........................................................................29

## Regulations:

37 C.F.R. § 42.6(a)(3)......................................................................31

37 C.F.R. § 42.20(c)........................................................................29

37 C.F.R. § 42.23(b) ..................................................................31, 32

37 C.F.R. § 42.100(b) .....................................................................18

## STATEMENT OF RELATED CASES

DeLaval International AB ("DeLaval") agrees with the Statement of Related Cases submitted by Lely Patent NV ("Lely").

## STATEMENT OF THE ISSUES

DeLaval disagrees with Lely's statement of the issues, and submits the following counter-statement.

Lely's patent claims in U.S. Patent 6,443,094 ("the '094 patent") are directed to a system for post-milking spray treatment of cows' udders. The claimed system comprises an automated spray device in combination with a moving platform. The moving platform transports cows in stalls sequentially to a designated treatment location, at which a contact sensor triggers the spray device to extend, spray, and then retract prior to the cow exiting the platform. Rose[1] discloses an automated spray device in combination with a rotary milking apparatus that includes a rotating platform. Rose's platform transports cows through a milking operation to a designated post-milking treatment location, at which a cam mounted to the rotating platform contacts an actuating switch to cause an automated teat spray device to extend, spray, and then retract prior to the cow exiting the platform. In two embodiments, Rose states that the rotary milking apparatus is of the type described in Chandler.[2] Chandler discloses a rotary milking apparatus in which stalls are mounted on an intermittently rotated milking platform.

The Patent Trial and Appeal Board ("Board") construed claim 1 of the '094 patent as encompassing both continuous and intermittent movement of the platform.

---

[1] British Patent No. 1,415,318 ("Rose"), A107-117.

[2] British Patent No. 1,398,596 ("Chandler"), A122-133.

1

The Board found that claim unpatentable as anticipated by Rose, or obvious over the combined disclosures of Rose and Chandler.[3]  The Board denied Lely's motion to amend its patent claims to recite a continuously moving platform.

The only issues raised in Lely's appeal are:

1. Whether the Board properly construed the phrase "said stalls passing by said cleaning location" in claim 1 of the '094 patent as encompassing both continuous and intermittent platform movement;[4]

2. Whether substantial evidence supports the Board's finding that Rose discloses stalls mounted on the rotating milking platform;

3. Whether substantial evidence supports the Board's finding that Rose discloses positioning the described post-milking teat spray device at a location between a milking location and an exit location; and

4. Whether the Board's denial of Lely's motion to amend was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.

---

[3] The Board also found each of claims 2-10 unpatentable.  Lely fails to raise any issue in this appeal specific to any claim in the '094 patent other than claim 1. Lely also does not dispute the Board's finding that claim 1, as construed by the Board, is unpatentable as obvious over Rose and Chandler.

[4] At page 1 of its brief, Lely purports to challenge the Board's construction of a phrase, "moving past the cleaning station."  However, that phrase does not appear anywhere in the '094 patent.

## STATEMENT OF THE CASE

Lely provides in its brief a two-part statement of the case: a part (A) entitled "Preliminary Statement" and a part (B) entitled "Nature of the Case, Course of Proceedings, and Disposition."  Br. at 2-3.[5]  DeLaval agrees with Lely's part (B) of its statement, which is a summary of the course of the proceedings below. DeLaval disagrees with Lely's part (A) of its statement and submits the following counter-statement of the case.

This appeal arises from the Board's Final Written Decision issued at the conclusion of its *inter partes* review of the '094 patent.  A1-27.  The Board found claim 1 unpatentable under 35 U.S.C. § 102(b) as anticipated by Rose.  A14.  The Board also found claim 1 unpatentable under 35 U.S.C. § 103(a) as obvious over the combined disclosures of Rose and Chandler.  A21.  The Board denied Lely's motion to substitute new claim 11 for claim 1 on the ground that Lely failed to carry its burden of demonstrating, by a preponderance of the evidence, that the proposed substitute claim is patentable.  A26.  This appeal followed.

Lely's issues raised in this appeal are limited.  Lely contends that the Board erred when it declined to construe claim 1 as restricted to "continuous" platform movement.  Lely seeks to narrow its claim by importing a limitation that is found only in the specification.

---

[5] We cite to pages of Lely's brief as "Br. at __," pages of the Joint Appendix as "A__," and excerpts of patents by column or page X, lines Y-Z, as "X:Y-Z."

Under the construction adopted by the Board, Lely's <u>sole</u> patentability argument is that the Board erred in finding claim 1 anticipated by Rose, on the grounds that Rose purportedly does not disclose stalls mounted on the moving platform and Rose purportedly does not teach locating the post-milking spraying device between a milking operation and the platform exit location.[6]

Lely fails to present any argument against the Board's obviousness finding where the Board's claim construction is applied.   <u>Thus, adopting the Board's claim construction moots every issue raised in this appeal except for Lely's contention that the Board improperly denied its motion to amend</u>.

### STATEMENT OF THE FACTS

DeLaval disagrees with Lely's statement of the facts, which DeLaval considers to be inaccurate and incomplete.  DeLaval submits the following counter-statement of the facts.

### A.    The Claimed Invention

After a cow is milked, the cow's udder traditionally was treated with a disinfectant.  A98 at 1:17-21.  That task can be performed manually by an individual with a spraying device.  *Id*.  The '094 patent is directed to an automated spraying device intended to replace the traditional task of spraying by hand.

---

[6] Lely fails to offer any reasoning as to how cows might be transported on Rose's rotating platform without stalls, or where Rose's post-milking teat spray device might be located other than between the location where the milking is completed and where the cows exit the platform.

4

The '094 patent describes a stationary retractable spray arm provided at a designated cleaning location relative to a conventional rotary milking platform. A98-99 at 2:59-3:4, 3:47-51.  As each stall arrives at the cleaning location, the spray arm is caused to extend to a cleaning position below a cow's udder, spray disinfectant, and then retract back to a position out of the path of the rotating stalls until a contact sensor signals the arrival of the next stall.  A99-100 at 4:20-32, 5:4-7, 6:52-7:22.  The rotary milking parlor, including the movable platform used to transport the cows, is characterized as "conventional."  A99 at 3:47-50.

Figures 2 and 4 of the '094 patent, reproduced below, show the relative movement from a retracted position (Fig. 2) to a cleaning position (Fig. 4) in response to a signal generated when a contact sensor (66) engages an element mounted to the platform—in this instance a leading vertical bar (43) of a given stall.



Figure 1 of the '094 patent, reproduced below, depicts the location of the spraying device (28) relative to a conventional rotary platform (22). Cows are transported in stalls (42) through a milk extraction location (34) and then to a cleaning location (38), at which a device (28) automatically sprays each cow's udder with disinfectant before the cow exits the platform at (40). A99 at 3:47-4:14.



Independent claim 1 of the '094 patent is reproduced at page 7 of Lely's brief, and generally requires: a plurality of milking stalls on a moving platform; an udder spraying device positioned at a cleaning location intermediate a milking location and an exit; and a control section, including a location sensor, for operating the udder spraying device as each stall arrives at the cleaning location. A106.

6

DeLaval disagrees with Lely's contention that the teat cleaner described in the '094 patent "achieves synchronization without connection to the workings of a carousel it serves." Br. at 4, heading III(A). As Lely correctly explains at page six (6) of its brief, the teat spray device described in the '094 patent includes a control section which causes a spray arm to extend, spray and then retract each time that a contact sensor is contacted by a platform-mounted element (*e.g.*, a post). Thus, any "synchronization" of the claimed spray device is provided directly by the intermittent connection of the contact sensor and a platform-mounted element.

DeLaval also disagrees with Lely's representation at page four (4) of its brief that the phrase, "a milking parlor," recited in the preamble to claim 1 constitutes a structural limitation. However, DeLaval agrees with the Board's determination that claim 1 calls for a moving platform having a plurality of stalls. A10-11.

## B.    The Prior Art

### 1.    Rose

Rose describes an automated spray device as a substitute for the previously known procedure of manually applying disinfectant to a cow's udder after automated milking on a rotary platform. A107 at 1:9-26. Specifically, Rose replaces the known manual procedure with a "spray device comprising a swingable arm" located at "one or more locations around the periphery of the rotatable

platform" of a "rotary type animal milking and/or treatment apparatus".  *Id*. at

1:27-41.  One such spray device in Rose includes a "container 26 for a sanitation

liquid" and is located "near to the position where the cows leave the platform".

A108 at 2:7-11, 58-65.

The relevant structural details of Rose's spray device are depicted in Rose's

Figure 1, which is reproduced below:



*FIG.1.*

A "swing arm 10" is pivotally mounted to a "rump rail 12 of a rotary type

milking apparatus which includes a rotatable platform 13 which is rotated about a

vertical axis relative to the rump rail 12."  A107 at 1:69-75.  A "spray arm 23" is

"disposed at a right angle to the swing arm 10" and includes "spray nozzles 24".

A107-108 at 1:93-2:2.  The illustrated spray device "is intended for use in spraying

a sanitation liquid mixed with water."  A108 at 2:7-9.  Thus, "the swing arm 10 is

provided with a container 26 for a sanitation liquid."  *Id*. at 2:10-11.

A "vacuum control valve 17" operates a "piston and cylinder device 15," each of which is mounted on a "support structure 14" which extends horizontally from the rump rail 12." A107 at 1:78-86. The "vacuum control valve 17 is operated by a solenoid 31 provided in an electrical circuit which includes a timing relay 32 and an actuating switch 33 which is actuated by a cam or the like (not shown) provided on the rotatable platform 13." A108 at 2:19-24. *See also* A114 at Fig. 4.

In use, when a cam provided on the rotating platform 13 contacts the actuating switch 33 of the spray device, the vacuum control valve 17 causes the spray arm 23 to pivot from an inoperative retracted position (shown in chain-dotted lines in Figure 1) through the hind legs of a cow to an operative cleaning position located below the cow's udder. A108 at 2:25-39. Spray nozzles 24 dispense sanitation liquid onto the cow's udder during the swinging movement of the spray arm. *Id*. at 2:39-49. After a time set by the timing relay 32, the vacuum control valve 17 is actuated to swing the spray arm 23 back to the inoperative retracted position. *Id*. at 2:49-55.

Rose's Figure 5, below, shows a platform-mounted cam 33' in contact with switch 31' such that the vacuum control valve 18' has caused the spray arm to move to the operative cleaning position.  A:108-109 at 2:127-3:3.



Rose also discloses in two embodiments that the rotary milking apparatus to which the described spraying device is combined is of the type described in Chandler.  A107 at 1:69-78; A108 at 2:66-77.

Lely's statement that "[t]he parties agree that Rose, [*sic*] lacks any of the structure of a plurality of stalls" is incorrect.  Rose discloses an automated spray device provided in conjunction with "a rotary type animal milking and/or treatment apparatus."  A107 at 1:9-14.  Rose explains that such a rotary type apparatus includes a "rotatable platform" on which cows are transported.  *Id.* at 1:15-19.  Claim 19 in Rose expressly recites a "rotary type animal milking and/or treatment

apparatus comprising a rotatable platform on which the animals to be milked or treated can be carried," and a specified spray device at one or more locations around the platform. A110 at 4:99-104. In certain embodiments, Rose also identifies Chandler as describing an example of a rotary type apparatus contemplated by Rose. A107 at 1:75-78; A108 at 2:74-77. Chandler's rotary type apparatus plainly provides platform-mounted stalls for securing and orienting cows. *E.g.*, A127 at Figure 1.

DeLaval asserted during the *inter partes* review that one skilled in the art would understand that Rose's disclosure of a rotary type milking apparatus, comprising a rotatable platform for carrying plural cows, necessarily included the provision of platform-mounted stalls. A47; A768. DeLaval additionally argued that even if platform-mounted stalls were not implicit in Rose's identification of a cow-carrying rotary platform, they were explicit in Rose's disclosure of embodiments which identified Chandler's rotary apparatus. A47-48; A767-768. The Board agreed with DeLaval. A13 ("Because Rose teaches using its spray device with Chandler's milking apparatus, and Chandler's milking apparatus comprises a rotating platform with a plurality of milking stalls, a person of ordinary skill would have known that Rose teaches attaching its spray device to a milking apparatus having a plurality of milking stalls.)" (citing *In re Baxter Travenol Labs*, 952 F.2d 388, 390 (Fed. Cir. 1991)).

## 2.    Chandler

Chandler describes a rotary milking apparatus as depicted in Chandler's

Figure 1, reproduced below.  A127.



FIG.1.

Chandler explains that, "[m]ounted on the platform 10 are wedge shaped

spacer or barrier members 11 which are formed of steel tubes and divide the

platform 10 into a plurality of radially extending stalls 12."  A122 at 1:75-79.

Chandler's rotary platform rotates intermittently, such that the stalls automatically

are indexed stall-by-stall, or two stalls at a time, to move each cow through the

milking operation from the platform entrance (23) to exit (24).  *See* A122 at 1:23-

39, A123 at 2:60-67, A125 at 4:12-15.

Lely's characterization that Chandler's platform rotation is operator-driven is

incorrect.  *See* Br. at 12 ("the operator restarts the platform rotating the carousel to

advance the width of one stall…"); 13 ("The operator restarts the carousel once

both the entering and the exiting cows have successfully assumed their positions.").

12

To the contrary, Chandler plainly describes <u>automated</u> rotation of the carousel. *See, e.g.* A125 at 4:32-46 (claiming a motor-driven "horizontal platform mounted for rotation … and an electric circuit connected to said electric motor including means for cutting out the electric motor periodically for a predetermined period of time to effect intermittent rotation of the platform").  Thus, Chandler's platform automatically rotates in increments to transport each cow through a complete rotation while the cow is present on the platform.

## C.    Lely's Motion to Amend

Lely filed a motion to replace claim 1 with new claim 11 which added a recitation, "in continuous motion throughout the milking cycle."  A557-559.  In its motion, Lely identified two prior art references which were not previously before the Board in the *inter partes* review, and argued patentability of the proposed substitute claim over those two references.  A567-568.  Lely did not argue or otherwise address in its motion how the proposed substitute claim should be deemed patentable over any of the prior art references already of record in the *inter partes* review, including but not limited to Rose and Chandler.  The Board denied Lely's motion on the ground that Lely did not meet is evidentiary burden of demonstrating that the proposed substitute claims are patentable.  A26 ("Patent Owner's failure to address the art of record is fatal to its motion, as the patentability of substitute claim 11 over Rose and Chandler is far from self-evident.").

13

## SUMMARY OF THE ARGUMENT

Claim 1 of the '094 patent is the only patented claim at issue in this appeal.[7] That claim is directed to the combination of a known automated spray arm and an admittedly conventional milking platform.  Rose described that same combination long before the '094 patent application was filed, as is demonstrated in the following side-by-side reproduction of Rose's Figure 1 (A111) and Figure 2 of the '094 patent (A91).



The Board correctly rejected Lely's attempt through claim construction to narrow the generically-recited platform movement to movement which exclusively is "continuous."  The evidence of record establishes that both continuously and intermittently rotated milking platforms were known at the time that the '094 patent

---

[7] Claims 2-10 depend from claim 1 and also were found unpatentable in the underlying *inter partes* Review.  A14-16, A21-24.  Lely's sole argument in its brief touching upon these claims is that issues involving independent claim 1 "flow to the dependent claims."  Br. at 7.  Lely fails to present any issue or argument that is specific to any of claims 2-10.

specification was filed.  *See, e.g.*, Chandler, A122-33 (intermittent); Morag, A825-33 (continuous).  Claim 1 of the '094 patent makes no distinction as to how the platform moves, and therefore encompasses both types of movement.  That interpretation is consistent with the repeated reference in claim 1 to the stalls being "at" the cleaning location, irrespective of how they are brought to that location.  Importing a limitation of continuous platform movement from the specification into the claim also would be contrary to the patentee's unequivocal statement that "it is <u>not intended</u> to limit the invention to the particular forms disclosed, but, on the contrary, the invention is to cover all modifications, equivalents and alternatives falling within the spirit and scope of the invention as expressed in the appended claims."  A101 at 8:59-64 (emphasis added).

The Board properly found claim 1 unpatentable as anticipated by Rose.  Rose's disclosure of a rotary milking parlor including a rotating platform intended to transport a plurality of cows through a milking operation, as well as its specific reference to Chandler as an example of such a rotary platform, provide substantial evidence to support the Board's finding that Rose's rotary milking platform included stalls.  Rose's disclosed embodiment in which the automated post-milking disinfection occurs on the rotating platform after the cows are milked provides substantial evidence to support the Board's finding that Rose describes a cleaning location between the milking location and the platform exit.

Ultimately, all of Lely's arguments concerning the Board's anticipation finding are moot. Lely's brief does not dispute the Board's alternative finding that claim 1 under the Board's construction is unpatentable as obvious over Rose and Chandler. Adoption of the Board's construction therefore necessarily leaves the Board's obviousness determination undisturbed.[8]

The Board properly denied Lely's motion to amend. Lely failed in its motion to address patentability of its proposed amended claim over prior art of record, including but not limited to the very prior art on which the *inter partes* review was instated. The Board's denial of Lely's motion on that basis was in accordance with the USPTO's reasonable interpretation of its own governing regulation, and therefore was not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.

## ARGUMENT

### A.    Standard of Review

The Board's factual findings are reviewed for substantial evidence, and its legal conclusions de novo. *In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1361 (Fed. Cir. 2012). A finding is supported by substantial evidence if a reasonable mind might accept the evidence as adequate to the support the finding. *Id*. Anticipation is a question of fact, which is reviewed for substantial evidence. *In re Gleave*, 560

---

[8] The Board did not enter any patentability decision addressing claim 1 under Lely's proposed and rejected claim construction.

F.3d 1331, 1334-35 (Fed. Cir. 2009).  Obviousness is a question of law based on underlying factual findings.  *In re Baxter Int'l*, 678 F.3d at 1361 (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)).

The Board's ultimate claim construction is reviewed de novo and its underlying factual determinations involving extrinsic evidence for substantial evidence.  *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841-42 (2015).

The Board's denial of a procedural motion is reviewed for an abuse of discretion.  *Bilstad v. Wakalopulos*, 386 F.3d 1116, 1121 (Fed. Cir. 2004).  An abuse of discretion is found if the denial: "(1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact finding; or (4) involves a record that contains no evidence on which the Board could rationally base its decision."  *Id.  See, also, Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1306 (Fed. Cir. 2015) (explaining that the Board's denial of a motion to amend in *inter partes* review is reviewed for abuse of discretion).  The USPTO's interpretation of its own regulation is controlling unless "plainly erroneous or inconsistent with the regulation."  *In re Sullivan*, 362 F.3d 1324, 1326 (Fed. Cir. 2004).

**B.    The Board correctly construed "passing by" to encompass both continuous and intermittent motion.**

Lely's argument that the Board erred in its construction of "moving past the cleaning station" (Br. at 20) addresses a claim construction determination that the Board did not make, on a phrase that does not appear anywhere in the '094 patent. Technically, Lely therefore fails to properly raise any claim construction issue in this case.

At trial, Lely argued that the phrase, "with said stalls passing by said cleaning location," in claim 1 requires the stalls, and the platform on which they are mounted, be in "continuous" movement past the cleaning location.  A7-8, A546. The Board rejected Lely's narrowing construction, and determined that the ordinary and customary meaning of that phrase "encompasses both continuous and intermittent motion."  A10.  The Board's construction is supported by the claim language and the specification.  In contrast, Lely's proposed construction is contrary to the ordinary and customary meaning, finds no support in the claims, and is inconsistent with the specification.

In an *inter partes* review of an unexpired patent, the Board construes claims according to their broadest reasonable interpretation in light of the specification of the patent in which they appear.  37 C.F.R. § 42.100(b); *see In re Cuozzo Speed Techs., LLC*, 778 F.3d 1271, 1281 (Fed. Cir. 2015).  Under that standard, the words of a claim are "generally given their ordinary and customary meaning," which is

18

the "meaning that the term would have to a person of ordinary skill in the art" when read in view of the specification. *In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007), quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-1315 (Fed. Cir. 2005); *see also Proxyconn*, 789 F.3d at 1298 ("[C]laims should always be read in light of the specification and teachings in the underlying patent.").

The ordinary and customary meaning of the phrase "stalls passing by" does not impose any condition or constraint on how the stalls pass by. Stalls on a rotating platform are passing by any fixed location whether the platform is rotated continuously or incrementally, like the seconds-hand of certain analog clocks. In either case, each stall that is rotated from an entrance to an exit necessarily passes by any intermediate cleaning location.[9] The Board correctly "found nothing in claim 1—or, for that matter, any of its dependent claims—that requires the stalls to be capable of moving past the cleaning location in a continuous manner, or that excludes intermittent movement past the cleaning location." A9.

Lely cites a series of phrases in claim 1 which it contends necessitate continuous movement of the "carousel" (platform). Br. at 21. Specifically, Lely refers to the following recitations in claim 1: "a moving platform"; "to move through a milking cycle"; and "passing by said cleaning location." *Id*. However,

---

[9] Lely's argument that "[i]ntermittent motion is not a species of motion" (Br. at 23) is nonsensical. How is a cow transported from the entrance to the exit of an intermittently-rotated platform if not by "motion?"

each of these noted phrases merely refers to movement, without any qualification as to whether that movement is or is not continuous.[10]  In contrast, the express language used in paragraph (a)(ii) of claim 1, referring to a cow which is in "one of said stalls which is **at** the cleaning location," is consistent with the Board's non-restrictive interpretation of the claim.  The specification likewise discloses that "the sensor 74 will send a signal to indicate that one of the stalls 42 has arrived **at** its disinfecting location."  A99 at 4:60-62 (emphasis added).

Lely's reliance on an embodiment found in the patent description, but omitted from the claims, is an invitation to improperly import a feature from the specification into the claims.  While the broadest reasonable interpretation of a claim is made in light of the specification and teachings in the underlying patent, limitations should not be imported from the specification.  *In re Trans Texas Holdings Corp.*, 498 F.3d 1290, 1299 (Fed. Cir. 2007) (citing *Phillips*, 415 F.3d at 1323).  "It is improper to confine the claims to the embodiments found in the specification." *Id*. (internal quotations omitted).  *See also*, *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) ("Even when the specification

---

[10] Lely also contends that recitations in claim 1 regarding the operation of a location sensor to provide signals identifying the arrival of a stall to the cleaning location demonstrate that "continuous movement of the carousel is the trigger" for operating the claimed spray device.  Lely's Brief, at 21.  However, as Lely concedes at page 6 of its brief, operation of the spray device is triggered by the noted signals of the location sensor.  The location sensor signals the arrival of a stall when the stall arrives, irrespective of whether that stall arrives as the result of continuous or intermittent movement of the platform on which it is mounted.

describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction.") (internal quotations omitted).

Lely does not, and cannot, point to any such words or expressions of manifest exclusion or restriction within the '094 patent. To the contrary, the '094 patent expressly calls for a non-restrictive claim interpretation. A101 at 8:59-64 ("It should be understood, however, that it is not intended to limit the invention to the particular forms disclosed, but, on the contrary, the intention is to cover all modifications, equivalents and alternatives falling within the spirit and scope of the invention as expressed in the appended claims.").

"[T]he line between construing terms and importing limitations can be discerned with reasonable certainty and predictability if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms." *Phillips*, 415 F.3d at 1323. Here, the '094 patent is directed to an automated spray device <u>for use with</u> a milking parlor. *See* A98 at 1:26-27 ("to be implemented in a circular milking parlor"). The milking parlor is characterized as "conventional" (A99 at 3:47-49) with the cleaning device being "retrofitted to an existing milking parlor" (A98 at 2:54). The '094 patent is devoid of any description of structural components responsible for causing the milking platform

to rotate in any manner.  And, it is undisputed that both continuous and intermittent rotary milking platforms were known when the '094 patent application was filed. *See, e.g.*, Chandler, A122-33 (intermittent); Morag, A825-33 (continuous).  In light of the patent's vague and scant description regarding an admittedly conventional milking platform, one skilled in the art would not view broad claim recitations of platform movement as necessarily being restricted to any one type of movement merely because that type of movement was mentioned in the specification.[11]

## C.    The Board's Anticipation Finding is Supported by Substantial Evidence.

A prior art reference anticipates a patent claim when the reference expressly or inherently discloses all of the limitations of the claim.  *In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997).

Lely argues that two elements of its patent claim 1 are not disclosed in Rose: (1) stalls and (2) a cleaning location intermediate the milk extracting location and the exit location.[12]

---

[11] The '094 patent also describes the platform in the disclosed embodiment as one that "<u>constantly</u> rotates" and moves at a speed of "0.2 to 0.9 mph."  A100 at 6:16-18, 31-34 (emphasis added).  Despite quoting these passages in its brief (Br. at 21), Lely does not argue that its patent claim requires <u>constant</u> rotation or movement at a speed within the disclosed range.  Lely's argument that "continuous" movement should be read into the claims is self-selective and arbitrary.

[12] Aside from Lely's claim construction argument, the remaining limitations recited in claim 1 are not in dispute.

### 1.    Rose Discloses Stalls.

Lely's patent claim 1 broadly recites "a plurality of milking stalls arranged on a moving platform."  The milking stalls are not characterized in the claim by any specific structure or functionality, other than the general inference that they are intended for use in connection with cows during a milking operation.

As found by the Board, Rose discloses a spray device for automatically disinfecting cows' udders, after milking, which is installed at "one or more locations around the periphery of the rotatable platform" of a "rotary type animal milking and/or treatment apparatus."  A11, citing A107 at 1:9-41.  The Board further found that Rose describes operating the disclosed spray device to extend from a retracted position to a cleaning position "between the hind legs of the cow standing on the platform."  A12, citing A108 at 2:25-39 (emphasis added).  The Board additionally found that "Rose teaches attaching its spray device to the rump rail of the rotary type milking apparatus described in Chandler, which apparatus has a plurality of milking stalls."  A13.   Lely does not dispute any of these findings.

Chandler's milking apparatus includes stalls in which animals are transported on a platform that rotates.  Rose's description of attaching his spray device to the rump rail of Chandler's milking apparatus expressly teaches attaching the spray device to a milking apparatus having "a plurality of milking stalls

arranged on a moving platform."  Thus, substantial evidence supports the Board's finding that Rose teaches that limitation recited in claim 1.

Lely argues that Rose falls short of incorporating Chandler by reference.  Br. at 24-25.  But, the Board's anticipation finding was not based upon Rose's "incorporation by reference" to Chandler.  Rather, the Board found that Rose's identification of Chandler as an example rotary type milking apparatus was such that "a person of ordinary skill would have known that Rose teaches attaching its spray device to a milking apparatus having a plurality of milking stalls."  A13, citing *In re Baxter Travenol Labs*, 952 F.2d 388, 390 (Fed. Cir. 1991).  The Court's opinion in *Baxter Travenol* did not address incorporation by reference.  In that case, the anticipating patent ("Becker") identified a specific commercial blood bag system ("Baxter's commercial system"), and evidence extrinsic to the patent established that Baxter's commercial system contained a primary bag plasticized with DEHP.[13]  The Board found that the patent's identification of the commercial bag system therefore disclosed to one skilled in the art that the patent was referring to a DEHP-plasticized primary bag.  This Court affirmed.  *Id*. at 390 ("[S]ince Becker referred to Baxter's commercial system and Baxter's commercial systems utilized a DEHP-plasticized primary bag, it is clear that one skilled in the art would have known that Becker was referring to a DEHP-plasticized primary bag.  That

---

[13] di-2-ethylhexyl phthalate.

fact, coupled with Becker's disclosure that the second bag was made of Teflon, leads to the unmistakable conclusion that the claims at issue were anticipated."). Under the same reasoning, the Board found that Rose specifically referred to Chandler's rotary milking platform, that Chandler's platform included milking stalls, and that one skilled in the art therefore would have known that Rose was referring to a platform with stalls.

Lely contends that any reliance on one skilled in the art precludes a finding of anticipation.  Br. at 24.  That contention is contrary to the Court's holding in *Baxter Travenol*, and an incorrect characterization of the law.  The question of anticipation must be viewed from the perspective of one of ordinary skill in the art. *See Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1309 (Fed. Cir. 2011) ("For a prior art reference to anticipate a patent claim, the reference, as read by one of ordinary skill in the art, must disclose each claim limitation."); *In re Spada*, 911 F.2d 705, 708 (Fed. Cir. 1990) (For anticipation, "the reference must describe the applicant's claimed invention sufficiently to have placed a person of ordinary skill in the field of the invention in possession of it.").

The deposition statements made by DeLaval's expert, Dr. Cagan, quoted in Lely's brief are consistent with the Board's finding.  In response to the question whether Rose discloses stalls, Dr. Cagan testified that, "it talks about, in Rose, it is known to milk cows on a rotary type milking apparatus … and, again, a rotatable

milking apparatus, at least the ones that I have seen, <u>all have stalls which I believe
is implicit in that statement</u>."  Br. at 26, quoting A700-701 (emphasis added).

Ultimately, the dispositive question regarding anticipation is whether one
skilled in the art would reasonably understand or infer from Rose's disclosure that
Rose's rotary milking platform included stalls.  Substantial evidence plainly
supports the Board's affirmative answer to that question.

### 2. Rose discloses a cleaning location intermediate a milk extracting location and an exit location.

Besides stalls, the only other element of claim 1 that Lely disputes being
found in Rose is the location of the cleaning apparatus being intermediate the
location where the cows are milked and where they exit the platform.  Br. at 28.
Lely's patent claim 1 recites "an udder cleaning apparatus positioned at a cleaning
location intermediate the milk extracting location and the exit location."

As found by the Board, "Rose teaches that one of the purposes of its
automated spray device is to replace the manual udder cleaning that occurs on a
rotating platform after the cows are milked."  A14, citing A107-108 at 1:19-24,
2:7-12.  The Board also found that Rose teaches locating the disclosed spray
device "near to the position where the cows leave the platform 13, *i.e.*, before the
exit location."  *Id.*, citing A108, 2:62-65.  Lely does not dispute any of these
findings.

Rose's disclosure of positioning the automated spray device next to a rotating platform, such that the device accomplishes post-milking disinfection of a cow that still is standing on the rotatable platform, makes clear that the device is located between the milking location and the exit location.  Thus, substantial evidence supports the Board's finding that Rose teaches the cleaning apparatus location recited in claim 1.

Lely's representation at page 26 of its brief that Dr. Cagan testified to the contrary is misleading, incorrect and irrelevant.  The statement, "I don't see it," quoted in Lely's brief was given in response to Lely's question whether Rose specifies "structure" of a "milk extracting location where milking machines extract milk."  A701, line 14, to A701, line 21.  When Dr. Cagan was asked to show where Rose discloses the spray device being located intermediate a milk extracting location and the exit location, Dr. Cagan identified the same passages from Rose as did the Board:

> So, in my report, I stated that this was disclosed in the Rose patent, page 1, lines 9 through 15, and page 2, [lines] 57 through 65, so – okay.  (A706-707).

Dr. Cagan further testified as follows:

> I interpret Rose to state that after the milking apparatus has been removed, near the exit is where that second spray device is located.  (A710).

Lely's representation that Dr. Cagan provided a response that was anything but in full agreement with the Board's finding is therefore demonstrably incorrect. Moreover, because the Board neither referred to nor relied upon Dr. Cagan's testimony—nor any other evidence outside the four corners of Rose—in connection with its finding that Rose teaches the claimed sprayer location, Lely's characterization of Dr. Cagan's testimony is irrelevant.

**D.    Lely does not dispute that claim 1 as construed by the Board is obvious.**

Lely's sole argument concerning the Board's finding that claim 1 is unpatentable as obvious over Rose and Chandler is that its claim should have been construed to require a platform in continuous rotational motion.  Lely does not challenge any aspect of the Board's obviousness finding relative to the claim as the Board construed it.  Thus, if the Board's construction of claim 1 is adopted, its determination that claim 1 is unpatentable as obvious remains undisturbed.[14]

**E.    The Board Properly Denied Lely's Motion to Amend.**

At trial, Lely moved to substitute claims 11-20 for its patent claims 1-10. A556-566.  Proposed substitute claim 11 adds the phrase, "in continuous motion throughout the milking cycle" to what is recited in claim 1.  A563-564.

---

[14] Lely correctly states in its brief that the Board did not enter a finding that Rose or Rose in combination with Chandler taught a teat washer in combination with a platform in continuous rotational motion.  Br. at 30.  Because the Board rejected Lely's narrowing claim construction, the question of whether such a narrowed claim is or is not patentable was not considered by the Board, and is not before the Court in this appeal.

In an *inter partes* review proceeding, the moving party bears the burden of proof to establish it is entitled to the relief requested in a motion. 37 C.F.R. § 42.20(c). The Board interprets that rule as requiring a patent owner to demonstrate that any proposed substitute claim is patentable over the prior art of record. *See Proxyconn*, 789 F.3d at 1304 (citing *Idle Free Systems, Inc. v. Bergstrom, Inc.*, IPR2012-00027, 2013 Pat. App. LEXIS 6302, at *4-5 (PTAB June 11, 2013)). The Board expressly adopted that interpetation in this case. *See* A363.[15]

Lely failed to address in its motion the prior art of record, including but not limited to the prior art upon which the *inter partes* review was instituted. The Board denied Lely's motion on that basis. A26 ("Thus, based on the current record,

---

[15] Lely incorrectly contends that the evidentiary burden in connection with a motion to amend should be placed on the party opposing the motion, to prove that the proposed amended claims are unpatentable. Br. at 18-19. That argument is foreclosed by 37 C.F.R. § 42.20(c), which places the burden of proof on the moving party. Lely does not argue that the USPTO acted outside its statutory authority in promulgating 37 C.F.R. § 42.20(c). Neither does Lely argue that the Board's interpretation of that rule–requiring a patent owner to show that its proposed amended claims are patentable over the prior art of record–is plainly erroneous or inconsistent with the regulation. To the contrary, the Board's interpretation is consistent with the statutory framework in which a patentee must "move to amend the patent," 35 U.S.C. § 316(a)(9), and that the Director must incorporate any new or amended claim that is "determined to be patentable," § 318(b). *See also Proxyconn*, 789 F.3d at 1307 (approving the Board's interpretation of § 42.20(c) as obligating a patent owner to show its substitute claims are patentable over the prior art of record). Shifting that burden to a Petitioner in an *inter partes* review would turn the patent process on its head. Under Lely's interpretation, any supported and narrowing amendment, no matter how slight, would automatically be entered and patented whenever the petitioner opts not to challenge the motion, thereby subverting the USPTO's authority and role in the patenting process.

Patent Owner has not carried its burden of demonstrating that proposed claim 11 is patentable over the prior art of record.").

In its reasoning for its denial, the Board noted that it was "undisputed that the feature that Patent Owner seeks to add to claim 1, a continuously rotating milking platform, was 'conventional' at the time of the invention." *Id*., citing A99 at 3:47-48, 4:11-12. The Board further acknowledged the testimony of Lely's expert, Dr. Mein, that at the time Lely's patent application was filed, "the overwhelming majority of rotary parlors in all major dairying nations incorporated continuously moving platforms." *Id*., citing A625-626 ¶ 35. And, as Lely twice-quotes in its brief (Br. at 30, 33), the Board recognized that "[n]either Patent Owner nor its expert contend that it would have been beyond ordinary skill at the time of the invention to modify Rose's automated spray device so that it could be used on a milking apparatus with a continuously rotating platform." *Id*., citing A897 at 36:12-17. The Board therefore concluded that Lely's proposed claim 11 "would represent the combination of a known and commonly used milking apparatus with Rose's automated spray device." *Id*.

Against that backdrop, the Board reasonably held that "Patent Owner's failure to address the art of record is fatal to its motion, as the patentability of substitute claim 11 over Rose and Chandler is far from self-evident." *Id*. The Board's denial of Lely's motion on that basis was in accordance with the USPTO's

reasonable interpretation of its own governing regulation, and therefore was not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.

Lely argues in its brief that it addressed patentability of its proposed substitute claim over Rose and Chandler in documents other than its motion–namely, in its Preliminary Statement, in its reply to DeLaval's opposition to the motion, and at oral argument. Br. at 33. That argument is misplaced. Board rules expressly require that "[a]ll arguments for the relief requested in a motion must be made in the motion." 37 C.F.R. § 42.23(b). Arguments may not be incorporated by reference from one document into another. 37 C.F.R. § 42.6(a)(3). Combined motions, oppositions, replies, or other combined documents are not permitted. *Id*.

Lely similarly argues that it addressed patentability of its proposed amended claim through Dr. Mein's Declaration. Br. at 33. That argument likewise is misplaced. Lely submitted Dr. Mein's Declaration at the same time that it filed both its opposition to DeLaval's petition and its motion to amend, and cites to different passages of the Declaration in each of those documents. <u>In its motion</u>, Lely cites <u>only</u> to two passages in Dr. Mein's Declaration: the first spanning page 7, ¶ 17 to page 8, ¶ 18 and the second appearing at page 22. *See* Lely's Motion, A567-568. Neither of those passages in Dr. Mein's Declaration addresses any of the prior art of record upon which the *inter partes* review was instituted. *See* A615-616, A630.

Thus, even if Lely had addressed some of the prior art of record via Dr. Mein's Declaration, it did not do so in its motion.  The Board is not obligated to scour the record to cobble together evidence outside of the motion that might possibly be relevant to the relief requested in the motion.  Lely was obliged to do so within the four corners of the motion.  37 C.F.R. § 42.23(b).[16]

Even if Lely's extrinsic arguments were to be considered in connection with its motion, they still do not address patentability of the proposed substitute claim over all of the prior art of record.  For example, Lely failed to address in any of its submissions to the Board the admission set forth in the '094 patent that the described rotating platform was "conventional."  A99 at 3:47-50.  Lely also failed to address Phillips[17] which discloses a continuously rotating milking platform about which "means may be timed to operate and be so located as to effect an udder wash to each cow before and after the milking operation."  A192 at 2:33-40, 61-68.  Lely additionally failed to discuss Van der Lely,[18] which describes a retractable udder

---

[16] As Lely concedes, it could have requested leave to expand the page limit for its motion.  Br. at 34.  It made no such request.

[17] U.S. Patent No. 3,765,373 ("Phillips"), A188-194.  DeLaval cited Phillips in its petition for *inter partes* review.  *E.g.* A32, A75-76.  The Board instituted *inter partes* review on grounds including Phillips.  A2.

[18] International Publication No. WO 97/37530 ("Van der Lely"), A195-213.  DeLaval cited Van der Lely in its petition for *inter partes* review.  *E.g.* A32, A75-76.

cleaning apparatus (16) located alongside a continuously rotating milking platform. *See, e.g.*, A197-198 at 1:7-2:9, A201 at 5:31-32, A209 at Figure 1.

Nowhere in any document submitted during the *inter partes* review did Lely address patentability of its proposed substitute claim over these prior art references of record, either independently or in combination with the disclosures of Rose and Chandler. Thus, even if the Board had consolidated the entire record into Lely's motion to amend, the Board's conclusion would still stand—Lely's failure to address the art of record is fatal to its motion.

## CONCLUSION

For the reasons set forth above, the Board's determination that claims 1-10 are unpatentable should be affirmed. The Board's denial of Lely's motion to amend also should be affirmed.

/s/ Jeffrey R. Snay
Jeffrey R. Snay
Douglas V. Rigler
Jeffrey M. Goehring
YOUNG & THOMPSON
209 Madison St., Suite 500
Alexandria, VA 22314
(703) 521-2297

*Counsel for Appellee*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that, on this the 1st day of September, 2015, I electronically

filed the foregoing Brief of Appellee with the Clerk of Court using the CM/ECF

System, which will send notice of such filing to the following registered users:

Mark L. Lorbiecki
LOWE GRAHAM JONES PLLC
701 5th Avenue, Suite 4800
Seattle, WA 98104

*Counsel for Appellant*
  *Lely Patent N.V.*

Meredith Hope Schoenfeld
Scott Weidenfeller
UNITED STATES PATENT
  AND TRADEMARK OFFICE
OFFICE OF THE SOLICITOR
PO Box 1450
Mail Stop 8
Alexandria, VA 22313

*Counsel for Intervenor*
  *Michelle K. Lee, Director,*
  *U.S. Patent and Trademark Office*

I further certify that, upon acceptance and request from the Court, the

required paper copies of the foregoing will be deposited with United Parcel Service

for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL

CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

The necessary filing and service were performed in accordance with the

instructions given to me by counsel in this case.

/s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES
206 East Cary Street
Richmond, VA 23219

## CERTIFICATE OF COMPLIANCE
### With Type-Volume Limitation, Typeface Requirements,
### and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   this brief contains <u>7,412</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word</u> in <u>14 Times New Roman</u>.

Dated: September 1, 2015                    <u>/s/ Jeffrey R. Snay</u>
                                                   Jeffrey R. Snay